SHIRLEY JEAN BEARD, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

RICHARD C. PATTERSON AND PHYLLIS PATTERSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 14671–79, 14687–79.    Filed December 17, 1981.

*William J. Harris*, for the petitioner in docket No. 14671–79.

*Dan A. Darnell* and *Edward J. Proppe*, for the petitioners in docket No. 14687–79.
*Clyde W. Mauldin*, for the respondent.

OPINION

DAWSON, *Judge*: Respondent determined the following deficiencies in petitioners' Federal income taxes for the calendar year 1975:

| Petitioner(s) | Docket No. | Deficiency |
|---|---|---|
| Shirley Jean Beard | 14671–79 | $20,841.57 |
| Richard C. Patterson and Phyllis Patterson[1] | 14687–79 | 23,216.65 |

The only issue for decision is whether certain amounts paid by Richard C. Patterson to Shirley Jean Beard are includable in her income under section 71[2] and deductible from his income under section 215. Respondent has taken inconsistent positions in these consolidated cases. However, on brief, respondent maintains that the amounts received by Shirley Jean Beard were part of a property settlement and are neither taxable to her nor deductible by her former husband.

All of the facts are stipulated. The stipulations of fact and the attached exhibits are incorporated herein by reference. The pertinent facts are summarized below.

Petitioner Shirley Jean Beard (Shirley) resided in Mesa, Ariz., at the time she filed the petition in her case. Petitioners Richard C. Patterson (Richard) and Phyllis Patterson resided in Ithaca, Mich., at the time they filed the petition in their case. The petitioners in both cases filed their 1975 Federal

---

[1]Phyllis Patterson is a party solely because she filed a joint return with her husband.
[2]All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue, unless otherwise indicated.

income tax returns with the Internal Revenue Service Center in Cincinnati, Ohio.

Richard and Shirley were married on April 18, 1947. During their marriage, they adopted two children, Michael Patterson (born September 9, 1955) and Patricia Patterson (born October 31, 1957). The couple resided in Michigan until their divorce on October 29, 1975. From 1957 until 1974, their personal residence was located on a tract of land (hereinafter referred to as State Road property) in Ithaca, Mich.

Neither Shirley nor Richard owned any property when they entered into the marriage. Thus, all of the property which was divided between them in their divorce settlement was acquired during the marriage. On July 24, 1957, Richard and Shirley purchased the State Road property from Delbert and Janet Shults for $20,000 pursuant to a land contract. The source of the $7,000 downpayment on the property was the joint efforts and assets of Richard and Shirley. On December 28, 1962, Richard purchased the Shults Equipment business from Delbert and Janet Shults for $150,000. The business was located on the State Road property adjacent to the personal residence of Richard and Shirley. Richard transferred the assets of the Shults Equipment business to Shults Equipment, Inc. (Shults Equipment), a corporation formed on August 1, 1966, in a nontaxable transfer in exchange for 2,000 shares of $10 par value common stock and 7,300 shares of $10 par value preferred stock.

The only time Shirley was employed during the marriage was while Richard was serving in the armed forces during the Korean War. However, she frequently entertained customers and employees of Shults Equipment at the residence adjacent to the business. In 1965, Shirley inherited $24,000 which was used in the acquisition of marital property and for expenses incurred in the marriage. With the exception of this inheritance and the downpayment on the State Road property, all funding of property interests (joint or otherwise) acquired by Shirley during the course of the marriage was provided by Richard. The source of these funds was his employment with Shults Equipment and its predecessors.

Immediately prior to the divorce, the couples' assets were owned as follows:

*Shirley*

| | |
|---|---|
| Mecosta Lake cottage | $58,000 |
| Remus Road property | 8,000 |
| Cash—bank accounts | 4,000 |
| Residence (net equity) | 8,000 |
| Promissory notes | 10,000 |
| Total | 88,000 |

*Richard*

| | |
|---|---|
| Cash | 45,000 |
| Promissory notes | 24,600 |
| Total | 69,600 |

*Shirley and Richard*
*(jointly with rights of survivorship)*

| | |
|---|---|
| State Road property | 70,000 |
| Littlefield Road property | 15,000 |
| Webster Street property | 23,000 |
| Texas property | 31,500 |
| Promissory notes | 6,400 |
| Total | 145,900 |

In addition, the outstanding common stock of Shults Equipment was owned as follows: Richard, 1,965 shares; Richard and Shirley (jointly with rights of survivorship), 35 shares; and an unrelated third party, 20 shares. The 7,300 shares of the company's preferred stock were owned by the couples' children. Richard also had an interest in the company's profit sharing plan which was valued at approximately $58,000.

On October 21, 1974, Richard filed suit for divorce from Shirley in the Circuit Court for the County of Gratiot. Shirley filed a similar suit seeking a divorce from Richard on October 28, 1974. Pursuant to a court order signed by Circuit Judge Leo W. Corkin on January 20, 1975, Richard was directed to pay temporary alimony to Shirley during the pendency of the divorce proceedings in the amount of $1,000 per month. The issues with respect to the distribution of the marital property and the amount of permanent alimony to be awarded to Shirley were also litigated before Judge Corkin. In an opinion dated October 3, 1975, Judge Corkin decided the alimony and property settlement issues and also resolved several disputes

concerning the valuation of some of the property. In particular, the common and preferred stock of Shults Equipment was valued at book value (stockholders' equity), or $592,000. With regard to the alimony and property settlement issues, his opinion provided in part:

The contest involves the distribution of property and the amount of alimony, if any, to be awarded defendant. The defendant is 49 years of age with no marketable skill. She claims to suffer some degree of disability, but could probably perform some form of work if it were necessary. However, the Court is satisfied that she could not maintain the standard of living to which she has become accustomed if left to her own resources. The Court finds that she is entitled to alimony for as long as she lives and does not remarry. The Court would set the alimony in the sum of $1,000.00 per month. In making this award the Court takes into consideration the fact that defendant will be receiving a substantial property settlement that should generate income as time goes on. * * *

A fair distribution of the property presents something of a problem due to the fact that the business, which without question should be allocated to the plaintiff, constitutes more than half of the parties' net worth. Also, the defendant prefers cash to property, so defendant's share in a lump sum would require a very substantial cash payment that might very well be more than plaintiff could handle, or under the best of circumstances substantial cash payments extending over a period of years. It would also appear to the Court that it would be more practical for the plaintiff to retain the real estate (other than defendant's home), except as otherwise herein provided, as well as the note and land contracts standing in his name.

Turning next to the business, the Court would observe that while this should be taken into consideration in arriving at a property settlement its success has been due, basically to plaintiff's efforts and abilities. Thus the Court would feel that defendant's share should involve only retained earnings. Therefore the Court would deduct the value of the common and preferred stock from the stockholders equity. This would leave only retained earnings, that defendant might have otherwise shared in or benefited from, to be considered. This would result in a figure of $499,000.00 as representing the business so far as the property settlement is concerned.

The Court considers this marriage as being of such duration as to entitle defendant to share equally in what the Court has determined to be the divisible property. It appeared that during the marriage defendant properly raised a family and kept up her end of the family and business affairs.

To provide defendant with her share of the divisible property, provision is made as follows:

(1) She will retain her cash on hand of $4,000.00, her note receivable of $10,000.00, and her home having an equity of $8,000.00, for a total of $22,000.00.

(2) She shall take the Mecosta Lake cottage, which the Court understands is in her name, together with the contents and appurtenances. The Court is aware that she is not interested in taking real estate, but in view of the

rather substantial cash payments defendant will be making over the next several years it seems only fair that she take one parcel. The parties agree as to its value and defendant can dispose of it if she sees fit.

(3) She shall be paid cash in the amount of $40,250.00 forthwith.

(4) Plaintiff shall pay the balance of $310,000.00 in monthly installments over a 121 month period commencing November 1, 1975. * * *

The divorce of Richard and Shirley became final under a judgment of divorce dated October 29, 1975. The judgment of divorce was drafted by the attorneys representing Richard in the divorce proceedings in accordance with the opinion previously rendered by Judge Corkin on October 3. In a section of the judgment entitled "Alimony," the court awarded Shirley alimony in the amount of $1,000 per month beginning November 1, 1975, and continuing each month thereafter until her death or remarriage. Another provision of the judgment entitled "Dower" stated that the property settlement provisions of the judgment "are in lieu of Defendant's dower rights and are in full satisfaction of all claims and demands Defendant has against Plaintiff by way of dower." In a section of the judgment entitled "Property Settlement," the court ordered the following division of the marital property:

|  | Shirley | Richard |
|---|---|---|
| Residence (net equity) | $8,000 | 0 |
| State Road property | 0 | $70,000 |
| Mecosta Lake cottage | 58,000 | 0 |
| Cash—bank accounts | 4,000 | 45,000 |
| Promissory notes | 10,000 | 31,000 |
| Littlefield Road property | 0 | 15,000 |
| Remus Road property | 0 | 8,000 |
| Webster Street property | 0 | 23,000 |
| Texas property | 0 | 31,500 |
| Profit sharing plan | 0 | 58,000 |
| Shults Equipment, Inc. | 0 | 499,000 |
| Subtotal | 80,000 | 780,500 |
| Cash payment | 40,250 | (40,250) |
| Installment payments | 310,000 | (310,000) |
| Total | 430,250 | 430,250 |

The payments of $40,250 and of $310,000 were awarded in separate paragraphs of the property settlement section of the judgment. In the event of a default on the installment payments, the judgment required interest to be paid at a rate

of 6 percent per annum on the entire unpaid balance of the property settlement, for each month the default continued. Richard was also required to pledge his stock in Shults Equipment as security for the payment of the installments due on the principal sum of $310,000, and to provide additional security in the event the book value of the stock declined below the amount of the unpaid installments, or in the event he decided to sell the stock.

The judgment of divorce also contained certain provisions pertaining to Richard's child support obligations. He was required to pay $500 per month until Patricia Patterson reached age 18 or graduated from high school, whichever came later. During this period, he was also required to maintain hospitalization insurance coverage for Patricia, and to pay all reasonable medical, hospital, dental, and orthodontic expenses which were not covered by such insurance.

Pursuant to the court order dated January 20, 1975, Richard made temporary alimony payments totaling $10,000 in 1975. Under the terms of the judgment of divorce, he made two alimony payments during 1975 totaling $2,000. In addition, during 1975, he paid Shirley the $40,250 lump-sum payment required under the property settlement provisions and also paid two installments of $2,561 each on the principal sum of $310,000.

On her 1975 Federal income tax return, Shirley included only $11,000 of the payments received in her taxable income. However, on his 1975 Federal income tax return, Richard reported $57,372 in alimony deductions. This included payments of temporary and permanent alimony totaling $12,000, the lump-sum payment of $40,250, and the two installment payments of $2,561 each. After these deductions were questioned on audit by the Internal Revenue Service, Richard filed a motion for amended judgment in the Circuit Court for the County of Gratiot with respect to the original judgment of divorce. Judge Corkin held a hearing on this motion on June 14, 1977. At the hearing, Judge Corkin stated that in issuing the original judgment of divorce, he had intended for the lump-sum and installment payments to be deductible by Richard for Federal income tax purposes. Accordingly, to clarify his intention, he entered a first amended judgment of divorce (amended judgment) on August 12, 1977. The amended

judgment deleted from the "Property Settlement" section of the original judgment of divorce the provisions calling for a lump-sum payment of $40,250 and installment payments totaling $310,000. These payments were incorporated in a new section of the judgment entitled "Alimony In Gross." This new section ordered Richard to pay Shirley $352,250[3] as alimony in gross and preserved the terms of the original judgment regarding amounts, due dates, security for the payments, and interest upon default. It also stated that the payments were intended to qualify as periodic alimony payments for purposes of sections 71 and 215.

Subsequently, Shirley took an appeal to the Court of Appeals, State of Michigan, on the question of whether Judge Corkin had the authority to enter the amended judgment. The Court of Appeals held that Judge Corkin did have the authority to issue the amended judgment under Michigan law because he "merely re-labeled a provision and added other language to reflect what he declared to be his original intention with respect to the tax treatment of the sum to be paid" and "did not alter the substantive rights of the parties."

In the respective notices of deficiency, respondent included in Shirley's income $46,372 in additional alimony, and disallowed $45,372 in alimony deductions claimed by Richard, as follows:

| Payments made during 1975 | | Amounts included by Shirley | Amounts deducted by Richard |
|---|---|---|---|
| Temporary alimony | $10,000 | $10,000 | $10,000 |
| Permanent alimony | 2,000 | 1,000 | 2,000 |
| Lump sum | 40,250 | | 40,250 |
| Installments | 5,122 | | 5,122 |
| Total | 57,372 | 11,000 | 57,372 |
| IRS adjustment | | 46,372 | (45,372) |
| Income (deductions) after adjustment | | 57,372 | 12,000 |

Section 71(a) includes in a wife's gross income periodic payments received in discharge of a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under a divorce decree or written

---

[3]This figure contained a typographical error; the correct figure should have been $350,250.

instrument incident to the divorce. Section 215 allows a deduction to the husband for payments made to his wife which are includable in her income under section 71. The requirement that the payments be made in discharge of a legal obligation imposed "because of the marital or family relationship" has been interpreted to require that the payments be in the nature of support rather than a property settlement. *Warnack v. Commissioner*, 71 T.C. 541 (1979); *Bishop v. Commissioner*, 55 T.C. 720 (1971); secs. 1.71–1(b)(4) and 1.71–1(d)(3)(i)(*b*), Income Tax Regs. The "periodic" requirement of section 71(a) is amplified in section 71(c). Section 71(c)(1) states that installment payments which discharge an obligation to pay a principal sum specified in a divorce decree or separation agreement cannot qualify as periodic payments. An exception to this general rule is provided in section 71(c)(2), which states that installments which are to be paid over a period ending more than 10 years from the date of the decree or agreement will be considered periodic payments, but only to the extent of 10 percent of the principal sum in any one taxable year.

The parties in these cases agree that the temporary and permanent alimony payments received by Shirley during 1975 totaling $12,000 are includable in her income under section 71, and are therefore deductible by Richard under section 215. However, they disagree as to the taxable status of the $40,250 payment and the two $2,561 installment payments on the principal sum of $310,000. Shirley contends that the disputed payments were part of a property settlement; Richard, on the other hand, contends that the payments were in discharge of a legal support obligation. On brief, respondent takes the position that the payments are neither includable by Shirley nor deductible by Richard because they are in the nature of a property settlement. Further, respondent contends that the $40,250 payment is not includable or deductible because it is not "periodic."[4]

It is well settled that the determination of whether payments are in the nature of support or part of a property settlement does not turn on the labels assigned to the payments by the court in the divorce decree or by the parties

---

[4]Respondent concedes that the installment payments on the $310,000 principal sum satisfy the periodic requirement.

in their agreement. *Hesse v. Commissioner*, 60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975); *Thompson v. Commissioner*, 50 T.C. 522, 525 (1968); *Bardwell v. Commissioner*, 38 T.C. 84, 89–90 (1962), affd. 318 F.2d 786 (10th Cir. 1963). The issue is a factual one and requires an examination of all the surrounding facts and circumstances. *Wright v. Commissioner*, 62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976); *Hesse v. Commissioner, supra* at 691. Unfortunately, because of the vexing problems which frequently arise in determining the nature and extent of a spouse's property rights under State law, this supposedly factual inquiry has all too often taken on a metaphysical aura as the courts have struggled to classify a particular payment as either support or property settlement, when, in reality, the payment possesses a hybrid nature sharing characteristics of both. In the process, similarly situated taxpayers have occasionally been accorded disparate treatment merely because of differences in State marital property laws. For this reason, and because the confusion in this area has spawned a relentless stream of litigation, it would appear that legislative reform is warranted. As we stated in *Schatz v. Commissioner*, T.C. Memo. 1981–341, note 10, some sort of safe harbor is needed so that taxpayers and divorce courts can predict with confidence the income tax consequences stemming from periodic payments occasioned by divorce. Until such legislation is enacted, however, we are left with no alternative but to plunge into the morass of the decided cases, many of them irreconcilable, and resolve this issue as best we can by applying the various factors which have been identified in prior decisions.

Factors which indicate that the payments are in the nature of a property settlement rather than a support allowance are: (1) That the parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets, *Porter v. Commissioner*, 388 F.2d 670, 671 (6th Cir. 1968), affg. per curiam a Memorandum Opinion of this Court; *Wright v. Commissioner, supra*; (2) that the recipient surrendered valuable property rights in exchange for the payments, *Mann v. Commissioner*, 74 T.C. 1249, 1259–1262 (1980); *Gammill v. Commissioner*, 73 T.C. 921, 928–929 (1980), on appeal (10th Cir., June 3, 1980); *Warnack v. Commissioner, supra* at

550–551; (3) that the payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient, *Widmer v. Commissioner*, 75 T.C. 405, 409 (1980), on appeal (7th Cir., June 26, 1981); *McCombs v. Commissioner*, 397 F.2d 4, 7 (10th Cir. 1968), affg. a Memorandum Opinion of this Court; *Land v. Commissioner*, 61 T.C. 675, 683 (1974); (4) that the payments are secured, *Widmer v. Commissioner*, *supra; Gammill v. Commissioner*, *supra* at 929; (5) that the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage, *Lambros v. Commissioner*, 459 F.2d 69, 71–72 (6th Cir. 1972), affg. a Memorandum Opinion of this Court; *Schottenstein v. Commissioner*, 75 T.C. 451, 464 (1980); (6) that the need of the recipient was not taken into consideration in determining the amount of the payments, *McCombs v. Commissioner*, *supra*; and (7) that a separate provision for support was provided elsewhere in the decree or agreement. *Schottenstein v. Commissioner*, *supra* at 457. Conversely, the absence of one or more of the above factors may tend to indicate that the payments are more in the nature of a support allowance.

We begin our inquiry with an analysis of the statutory and judicial authority governing the division of property and the award of alimony in Michigan. The Michigan Supreme Court has stated that the laws of divorce in Michigan are statutory in nature and the equitable disposition of property is confined to the limits of the applicable statutes. *Charlton v. Charlton*, 397 Mich. 84, 243 N.W.2d 261, 265 (1976). For our purposes, the relevant statutory provisions are Mich. Comp. Laws secs. 552.19 and 552.23(1) (Mich. Stat. Ann. secs. 25.99 and 25.103(1) (Callaghan 1974)), which provide as follows:

Sec. 552.19. Upon the annulment of a marriage, a divorce from the bonds of matrimony or a judgment of separate maintenance, the court may make a further judgment for restoring to either party the whole, or such parts as it shall deem just and reasonable, of the real and personal estate that shall have come to either party by reason of the marriage, or for awarding to either party the value thereof, to be paid by either party in money.

Sec. 552.23(1). Upon every divorce from the bond of matrimony and also upon every divorce from bed and board if the estate and effects awarded to either party shall be insufficient for the suitable support and maintenance of either party and such children of the marriage as shall be committed to the care and custody of either party, the court may further award to either party

such part of the real and personal estate of either party and such alimony out of the estate real and personal, to be paid to either party in gross or otherwise as it shall deem just and reasonable, having regard to the ability of either party and the character and situation of the parties, and all the other circumstances of the case.

The authority of a Michigan court to divide the marital property between the parties to a divorce is generally perceived to derive from sec. 552.19.[5] *Wilcox v. Wilcox*, 108 Mich. App. 488, 310 N.W.2d 434, 437 (1981); *Darwish v. Darwish*, 100 Mich. App. 758, 300 N.W.2d 399, 405 (1980); *Heilman v. Heilman*, 95 Mich. App. 728, 291 N.W.2d 183, 184 (1980); *Miller v. Miller*, 83 Mich. App. 672, 269 N.W.2d 264, 266 (1978); *Engemann v. Engemann*, 53 Mich. App. 588, 219 N.W.2d 777, 780 (1974); *Mixon v. Mixon*, 51 Mich. App. 696, 216 N.W.2d 625, 627 (1974). In determining the share of property to be awarded each spouse, the court is required to consider "all the equitable factors involved," including "source of property, contribution towards its acquisition, the years of married life, the needs of the parties, their earning ability and also the cause for divorce." *Johnson v. Johnson*, 346 Mich. 418, 78 N.W.2d 216, 222 (1956). The division need not necessarily be

---

[5]In *Schatz v. Commissioner*, T.C. Memo. 1981–341, n. 16 and n. 18, this Court interpreted sec. 552.19 as merely requiring that the court award to each party his or her preexisting interest in the marital property or a payment in exchange therefor; in other words, a division according to legal ownership at the time of divorce. We then construed sec. 552.23(1) to permit a further adjustment to the property division and/or an award of alimony where necessary to provide for the suitable support and maintenance of either spouse. Thus, we concluded that an award of one spouse's separately held property to the other would normally constitute an award in lieu of alimony under sec. 552.23(1).

Upon further reflection, we think that the better interpretation of the mesh between secs. 552.19 and 552.23(1) is as set forth in the text of this opinion. Although the language of sec. 552.19 is somewhat ambiguous, we think it authorizes the court to apportion the parties' marital property in a just and reasonable fashion, irrespective of legal ownership. Furthermore, such an award of property is not necessarily in lieu of alimony, although factors related to support are permitted to play a role in the division. See *Johnson v. Johnson*, 346 Mich. 418, 78 N.W.2d 216, 222 (1956). We think this interpretation of sec. 552.19 is consistent with the more recent appellate court decisions in Michigan, which reflect a growing tendency upon divorce to treat marital property (i.e., property acquired through the efforts of either or both spouses in the course of the marriage) in a manner similar to community property, and to make a separate provision for alimony, if necessary, to adjust for differences in the spouses' earning capacities.

We should note, however, that in our view, the result reached in *Schatz* is correct no matter which statute is deemed to have governed the division of property. In that case, alimony-type considerations clearly were a significant factor in determining the amount of property to be received by the taxpayer-wife, as evidenced in part by the fact that the parties intended that she receive more than one-half of the marital estate in exchange for the release of her right to alimony.

equal, but must be fair and equitable in light of the overall financial circumstances of the parties. *McDermott v. McDermott*, 84 Mich. App. 39, 269 N.W.2d 299, 300 (1978); *Crane v. Crane*, 17 Mich. App. 588, 170 N.W.2d 194, 196 (1969). In the event that the portion of the marital property awarded to a spouse is deemed to be insufficient for her "suitable support and maintenance," the court is empowered under sec. 552.23(1) to award her alimony and/or a portion of the other spouse's separate property (including property acquired outside the marriage by gift, devise, or inheritance). See *Charlton v. Charlton, supra*; *Darwish v. Darwish, supra* at 403 n. 1; *Davey v. Davey*, 106 Mich. App. 579, 308 N.W.2d 468 (1981). Thus, it is clear that under Michigan law, a wife may acquire rights to a share of her husband's separately owned property upon divorce, and factors not necessarily related to her need, such as the duration of the marriage, fault, and relative contributions of the parties, may properly be considered in effecting an equitable distribution of the marital property.

With these principles in mind, we now examine the manner in which the Michigan court divided the petitioners' property. In his opinion dated October 3, 1975, Judge Corkin stated that the marriage was "of such duration [approximately 28 years] as to entitle [Shirley] to share equally in what the Court has determined to be the divisible property." As further support for an equal division of such property, the court observed that "during the marriage [Shirley] properly raised a family and kept up her end of the family and business affairs." In ascertaining the value of the divisible property, Judge Corkin first determined the value of the Shults Equipment business to be its book value of $592,000. He then subtracted from this value an amount which apparently corresponded with the par value of the common and preferred stock outstanding, thus arriving at a value of $499,000, which he felt represented the value of retained earnings which Shirley "might have otherwise shared in or benefited from." This amount was then added to the value of the couples' other separately and jointly held property and Shirley was awarded exactly 50 percent of the total.

In physically dividing the property, the court took into consideration the fact that Shirley preferred cash to real estate. The court also felt that the business, which comprised

over one-half of the couples' net worth, should be awarded to Richard. Thus, to effect an equal division of what he had determined to be the divisible property Judge Corkin directed that Richard pay Shirley an immediate cash payment of $40,250 plus $310,000 payable in installments over a 121-month period.

Based on our analysis of Michigan law and the manner in which Judge Corkin divided the property accumulated during the marriage, we think that these payments more closely resemble a property settlement than a support allowance. It is apparent that the extended duration of the marriage, coupled with Shirley's faithful performance of her marital and business duties, led the court to view the relationship as a partnership in which each was more or less an equal partner. Consequently, the court decided that upon "liquidation" of this partnership, each party was entitled to share equally in the "divisible property," which it determined to be the couples' total assets less a $93,000 adjustment to reflect the contributed capital of Schults Equipment. Of this adjustment, $73,000 represented the par value of preferred stock owned by the couples' children. Thus, in substance, the property settlement resulted in an almost exact 50–50 split of the real and personal property which had been accumulated during the marriage. We think that the partnership theory upon which this settlement was predicated strongly suggests that the periodic payments used to equalize the division were capital in nature and not intrinsically related to Shirley's need.

Our conclusion is buttressed by other facts in the record. To begin with, the payments at issue bore all the earmarks of a property settlement. They were part of a fixed principal sum; they were not subject to modification or termination upon the occurrence of contingencies; they were secured by a pledge of the Shults Equipment stock awarded to Richard; and interest was to accrue upon default. Another crucial factor supporting a property settlement is the fact that a separate provision for periodic alimony totaling $12,000 annually was included in the decree. The court's opinion makes it clear that these payments were intended to provide for her support, taking into account the income she could be expected to earn on the assets received by way of the property settlement. Significantly, the amount of the monthly payments equaled the amount of temporary

alimony ordered by the court while the couple was separated, suggesting that the permanent alimony was adequate to take care of her basic needs. All of these facts tend to indicate that the lump-sum and installment payments were not intended to discharge a legal support obligation.

Richard makes much of the fact that the amended judgment entered on August 12, 1977, reclassified the payments in issue as "alimony in gross" in order to reflect Judge Corkin's intent that the payments qualify as deductible alimony. Yet, even assuming this was his true intention at the time the original judgment was entered,[6] the fact remains that his intentions regarding the *tax consequences* associated with the payments have little bearing on the issue before us. The important question is whether Judge Corkin ordered the payments in recognition of the wife's right to an equitable share of the property accumulated during the marriage (irrespective of title ownership), or whether he did so in recognition of her right to support. On this record, we think the former explanation is the more logical of the two, and therefore, we attach little or no significance to the cosmetic changes contained in the amended judgment.

Richard also contends that at least a portion of the payments were necessarily in the nature of support since Shirley did not surrender "tangible" property rights equal in value to the sum of the payments she was entitled to receive.[7] However, we are not convinced that a finding to that effect automatically precludes a finding that the payments were part of a

---

[6]Although a modifying order intended to have retroactive effect will normally have no effect on the Federal income tax consequences associated with payments made before the date of the order (see *Gordon v. Commissioner*, 70 T.C. 525 (1978); *Turkoglu v. Commissioner*, 36 T.C. 552 (1961)), an exception applies where the original judgment mistakenly did not reflect the true intent of the court at the time it was entered. See *Newman v. Commissioner*, 68 T.C. 494 (1977); *Johnson v. Commissioner*, 45 T.C. 530 (1966).

Because we conclude that the modification ordered by Judge Corkin would have no material impact on the outcome of the property settlement/support issue, we need not decide whether the amended judgment should be given retroactive effect for tax purposes.

[7]At the time the divorce proceedings were commenced, $88,000 of the couples' property was titled in Shirley's name. In addition, she and Richard owned 35 shares of Shults Equipment common stock and $145,900 of other property as joint tenants with rights of survivorship. In the property settlement, she was awarded property worth $80,000 and cash payments totaling $350,250. Thus, it is clear that she did relinquish some "tangible" property rights in exchange for the payments. However, it is difficult to value those rights, principally because her relatively small interest in the Shults Equipment stock may have had a value far in excess of book value when viewed from Richard's perspective.

property settlement. To the contrary, we think that the payments need only be in the *nature* of a division of capital to support such a finding,[8] and the extent to which preexisting ownership rights in the marital property were surrendered as a quid pro quo is merely one factor to consider in resolving the issue. The trial court was legally required to divide property acquired in the course of the marriage in a fair and equitable manner, taking into account all relevant facts and circumstances. It chose to treat the marriage as a partnership and divided the marital property almost exactly in half, using the lump-sum and installment payments to balance the division. A separate award of contingent alimony was made to provide for Shirley's future support. Under these circumstances, we think the disputed payments are more properly viewed as part of a property settlement in recognition of her various rights to a share of the marital property.[9] Accordingly, we hold that the

---

[8]See, e.g., *Schottenstein v. Commissioner*, 75 T.C. 451, 456 (1980), where this Court stated: "If the payments required under * * * the separation agreement effected a property division *or* satisfied [the wife's] property rights, they would be neither includable in her gross income under section 71(a) nor deductible by [the husband] under section 215, *since they would be capital in nature.* [Emphasis added.]"

[9]In addition to the "tangible" property interests referred to in note 7 *supra*, Shirley also had a statutory right to dower, Mich. Comp. Laws sec. 558.1 (Mich. Stat. Ann. sec. 26.221 (Callaghan 1974)), which was required to be satisfied upon divorce by the inclusion of a provision in the divorce decree in lieu of dower. Mich. Comp. Laws sec. 552.101 (Mich. Stat. Ann. sec. 25.131 (Callaghan 1974)). Accordingly, the judgment of divorce provided that the property settlement provisions contained therein were in full satisfaction of her dower rights.

Additionally, we think that under Michigan law, Shirley acquired some sort of interest in her husband's separately titled property by virtue of her monetary and nonmonetary contributions during their lengthy marriage, which interest was recognized and provided for by way of the property settlement provisions in the divorce decree. It is true, as we observed in *Schatz v. Commissioner*, T.C. Memo. 1981–341, n. 18, that her rights in the marital property have not yet been characterized by the Michigan Supreme Court as "vested" upon the commencement of the divorce proceedings, as the supreme courts of certain other States have done in interpreting statutory provisions giving the spouse a right to a "just and reasonable" or "just and equitable" share of the marital property. See, e.g., *Cady v. Cady*, 224 Kan. 339, 581 P.2d 358 (1978); *In re Questions Submitted by United States District Court*, 184 Colo. 1, 517 P.2d 1331 (1974); *Collins v. Tax Commission*, 446 P.2d 290 (Okla. 1968). In the past, this Court has relied on the existence of such a "vested" right to support a holding that periodic payments were part of a division of co-owned property for purposes of sec. 71. See, e.g., *Mann v. Commissioner*, 74 T.C. 1249 (1980); *Gammill v. Commissioner*, 73 T.C. 921 (1980), on appeal (10th Cir., June 3, 1971); *Mills v. Commissioner*, 54 T.C. 608 (1970), affd. 442 F.2d 1149 (10th Cir. 1971); *Jackson v. Commissioner*, 54 T.C. 125 (1970). Although the present case is technically distinguishable from these cases, we question whether a different result should obtain merely because the Michigan Supreme Court has not seen fit to characterize the spouse's property rights as "vested" upon the filing

payments are not includable in Shirley's income under section 71 and are not deductible by Richard under section 215.[10]

To reflect the foregoing and a concession in Shirley's case,

*Decision will be entered under Rule 155 in docket No. 14671–79.*

*Decision will be entered for the respondent in docket No. 14687–79.*

---

of a divorce petition.

In any event, we think that under *the particular facts and circumstances of this case*, Shirley did acquire an interest in her husband's property pursuant to sec. 552.19 as a result of her marital contributions. However, we see no purpose to be served in attempting to classify the interest as legal or equitable, tangible or intangible, vested or nonvested, or choate or inchoate; the fact of the matter is that the interest existed, it was recognized by the court upon divorce, and it did not derive from the husband's legal support obligation. That, in our judgment, is sufficient to support a holding that the payments attributable to that interest were in the nature of a property settlement. See *Lambros v. Commissioner*, 459 F.2d 69 (6th Cir. 1972), affg. a Memorandum Opinion of this Court; *Boucher v. Commissioner*, T.C. Memo. 1981–258; compare *Schottenstein v. Commissioner*, 75 T.C. 451, 463–464 (1980).

[10]In view of our holding, we need not address the issue of whether the $40,250 lump-sum payment qualifies as a periodic payment under sec. 71.