JOAN E. PRATER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RONALD R. PRATER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Prater v. Commissioner
Docket Nos. 22489-89, 10956-90
United States Tax Court
T.C. Memo 1993-273; 1993 Tax Ct. Memo LEXIS 275; 65 T.C.M. (CCH) 2989; June 23, 1993, Filed *275 An appropriate order will be issued denying Ronald's motion to take judicial notice of adjudicative facts. RP seeks judicial notice of motions and an order of a State court concerning his motion to amend or modify a 9-year-old divorce decree of that court awarding to JP a percentage of the net income from an oil and gas lease. The underlying dispute before this Court is as to the income tax treatment of RP's payments to JP under this provision of the divorce decree. JP and R contend that the motions and order are not proper adjudicative facts for judicial notice, Fed R. Evid. 201(a), and are not relevant to the instant case. Fed. R. Evid. 402. 1. Held: This Court may take judicial notice of the existence of a State court order, but not of the State court's findings of fact, where collateral estoppel is not present. Fed. R. Evid. 201. 2. Held, further although the State court's order is relevant to the instant case, Fed. R. Evid. 401, we will not receive it into evidence because the probative value of the State court's order is small and is substantially outweighed by the danger of unfair prejudice and considerations of undue delay and waste of time. Fed. R. *276 Evid. 403. For petitioner: John A. Vetter and Ken W. Dannenberg in docket No. 22489-89. For petitioner: Thomas R. Docking, in docket No. 10956-90. For respondent: Bruce K. Meneely. CHABOT
CHABOT
MEMORANDUM OPINION CHABOT, Judge: This matter is before us on the motion of petitioner Ronald R. Prater, to take judicial notice of certain adjudicative facts. Respondent determined deficiencies in Federal individual income tax against petitioners as follows: Joan E. Prater Ronald R. Prater Year
Docket No. 22489-89
Docket No. 10956-90
1984
$ 14,346.44
$ 34,936.00
1985
46,408.60
66,746.00
1986
26,709.60
[1]   *277 After concessions by respondent, the issue for decision is whether payments made by Ronald to Joan are periodic payments includable in Joan's gross income under section 71(a)(1) [2] and are deductible by Ronald under section 215(a), or whether they are part of a property settlement. I. Background
Joan *278 and Ronald resided in Wichita, Kansas, at the times their respective petitions were filed in these consolidated cases. Petitioners were divorced, after a 27-year marriage, by a Journal Entry divorce decree (hereinafter sometimes referred to as the Journal Entry) of the District Court of Sedgwick County, Kansas (hereinafter sometimes referred to as the Kansas Court). The Journal Entry was signed by Judge Owen Ballinger. After a trial lasting several weeks, the Kansas Court sent a letter to petitioners' divorce counsel advising them of his decision; the letter ruling was to form the basis for a journal entry. The Journal Entry, which was dated June 28, 1983, but was filed on July 28, 1983, was prepared by Ronald's counsel and was not signed by Joan or her counsel. The Journal Entry provides, under the heading Method of Alimony Payment, that Ronald is to pay to Joan "as alimony and support an amount equal to 33.0% of the gross income, reduced by 33.0% of direct operating expenses * * *, from the sale of oil and gas produced from the Binger lease beginning July 1, 1983." The Journal Entry further provides that -- 8) The Court reserves jurisdiction over the litigation to determine *279 disputes between the parties as to the method, amount, and payment of the alimony due, and in regard to any manner concerning the operation of the Binger lease including, but not limited to determination of income and allowable expenses.
The Journal Entry further provides that if the Binger lease is sold or transferred "within 121 months of the filing of the Journal Entry" then Ronald is to "receive 67.0% of the net sale proceeds after expenses and income taxes and * * * [Joan] shall receive the remaining 33.0% of the net sale proceeds after expenses of said sale." The Journal Entry further provides that -- 10) The payment of alimony shall be made for a period of 121 months from July 1, 1983 or until the cessation of economic production from the Binger lease for good cause. The payment of alimony shall cease in the event of the death of * * * [Joan] or the occurrence of any of the events set out in paragraph 9. [I.e., the sale or other transfer of the Binger lease.]
During the years before us, Ronald paid the amounts shown in table 1 to Joan pursuant to the Binger lease provision of the Journal Entry. Table 1 Year
Amount Paid 1984
$ 74,823.00
1985
139,828.69
1986
91,846.40
Total
306,498.09
*280 On August 26, 1992, with only 12 months left of the 121-month period for payments under the Binger lease (the last payment was to be made by August 15, 1993), and apparently a few months after Judge Ballinger retired, Ronald moved the Kansas Court for an order modifying "the monthly spousal maintenance obligation" that he paid to Joan. His stated grounds for the order are that Joan's "need for spousal maintenance has substantially decreased" and his "ability to pay spousal maintenance has substantially decreased" since the time the Journal Entry was entered. On November 2, 1992, Joan moved the Kansas Court to dismiss Ronald's motion on the ground that the original "award was a percentage of income from an oil and gas lease." By an order (hereinafter sometimes referred to as the Order) dated November 20, 1992 (but apparently not drafted and filed until January 1993), Judge M. Kay Royse of the Kansas Court denied Joan's motion, and further held "That the trial Court specifically retained jurisdiction over the litigation with respect to alimony, therefore, this Court has jurisdiction to hear evidence on * * * [Ronald's] motion." Thereupon, after the instant cases had been submitted *281 and all the parties' briefs had been filed, Ronald moved this Court to take judicial notice of the Order. We required Ronald to clarify his motion and then directed Joan and respondent to file responses to Ronald's motion. II. Analysis
Ronald contends that the motions and the Order are appropriate adjudicative facts under Rule 201(a). [3] He "primarily asks this Court to take judicial notice of the Kansas District Court's determination. [the Order]" He asks us to notice the related material in order to understand the Order. Joan and respondent argue that the motions and the Order do not constitute adjudicative facts under Rule 201(a). Joan contends that the evidence that Ronald asks us to notice is not relevant, and so is inadmissible. Respondent also contends that taking judicial notice of the Order may violate the doctrine of collateral estoppel. Respondent urges that if we take judicial notice of the motions and *282 Order, then we should also take judicial notice of the entire record of the proceedings, including the transcript of the hearing that led to the Order. Although we agree with Ronald that the Court could properly take judicial notice of the Order, and that the Order appears to be relevant, we will deny Ronald's motion because the probative value of the matter sought to be noticed is substantially outweighed by the danger of unfair prejudice, and by considerations of undue delay and waste of time. We consider the requirements of judicial notice (Rule 201) first, and then relevance (Rule 401) and excludability of relevant evidence (Rule 403). A. Judicial Notice
Under section 7453, the Federal Rules of Evidence apply to the proceedings in the instant cases. Estate of Shafer v. Commissioner, 80 T.C. 1145, 1151 (1983), affd. 749 F.2d 1216 (6th Cir. 1984); Rule 143, Tax Court Rules of Practice and Procedure.
Rule 201(b)[4] requires that, in order for a fact to be judicially noticed, the fact must be either (1) generally known within the community or (2) capable of accurate and ready determination by sources whose accuracy *283 cannot reasonably be questioned. *284 Records of a particular court in one proceeding commonly are the subject of judicial notice by the same and other courts in other proceedings. Petzoldt v. Commissioner, 92 T.C. 661, 674 (1989), and cases there cited. That a particular case is on file, its docket number, who the attorneys of record are, who the presiding judge is, who the clerk of the court is, that a decision or judgment was entered, that an opinion was filed, as well as the text of the opinion, are all facts that are part of the public record. They are capable of ready and accurate determination and cannot reasonably be questioned. Estate of Reis v. Commissioner, 87 T.C. 1016, 1027 (1986). In Estate of Reis, respondent asked us to take judicial notice of specific findings of fact of the New York State courts in lengthy litigation regarding parties in privity with the taxpayer. Although we took judicial notice of the existence of New York State court opinions, we declined to take judicial notice of the specific findings of fact therein because those facts were not (1) generally known to the public nor (2) so indisputable that their accuracy cannot *285 be questioned. "The mere fact that a court in one opinion makes findings of fact is not a basis for the same or another court in another proceeding to take judicial notice of those findings and deem them to be indisputably established for purposes of pending litigation." 87 T.C. at 1028-1029. Accordingly, although we might take judicial notice of the Order, and of the related material but only to the extent that this would help us to understand the Order, it would not be appropriate for us to take judicial notice of the facts stated in the Order or in the related materials. [5]
B. Admissibility
If the Order and related materials are relevant evidence, within the meaning of Rule 401, [6] then they are admissible, unless otherwise provided by (among other things) the Federal Rules of Evidence. Rule 402. Rule 403[7] requires us to balance the probative value of the evidence against certain specified *286 considerations, and authorizes us to exclude the evidence if those considerations substantially outweigh the probative value. The ultimate issue in the instant case is whether the payments made by Ronald to Joan during the years in issue were in the nature of a property settlement or were periodic payments, within the meaning of section 71. Our determination *287 of how the payments are to be characterized for Federal tax purposes is a question of fact for which we examine all of the surrounding circumstances to determine the intent of the parties or the divorce court. Riley v. Commissioner, 649 F.2d 768, 773 (10th Cir. 1981), affg. T.C. Memo. 1979-237; Beard v. Commissioner, 77 T.C. 1275, 1284 (1981). The classification of the payments by the Kansas Court is one circumstance which we may consider. In order to understand the effect of the Journal Entry, we must consider Kansas law. The Order is one of the surrounding circumstances which may assist us in determining the nature of Ronald's payments. However, the labels assigned by the Kansas Court in the letter ruling, the Journal Entry, or the Order do not determine how the award should be treated as a matter of Federal tax law. Riley v. Commissioner, 649 F.2d at 773-774; Beard v. Commissioner, 77 T.C. at 1283-1284. Also, it is not clear from the Order or Judge Royse's statements at the hearing which led to the Order, whether Judge Royse's *288 conclusions followed primarily from her analysis of the general jurisdiction of the Kansas Court or were affected by the specific provision in the Journal Entry reserving jurisdiction over litigation as to the amounts of the Binger lease proceeds payments from Ronald to Joan. We contrast Judge Royse's specific reference to the Journal Entry's reservation of jurisdiction (par. 8 of the excerpt quoted supra under I. Background) with the absence of citations to Kansas law in any of the documents Ronald asks us to notice. Thus, the probative value of the Order, as evidence in the instant cases, appears to be slight. See Michelson v. Commissioner, 951 F.2d 288, 290-291 (10th Cir. 1991), affg. T.C. Memo. 1990-27. Finally, we are troubled by the proceeding which led to the Order. Judge Royse seemed puzzled by the situation, stating as follows at the hearing which led to the Order: Mr. Blaylock [Joan's counsel] does make a good point that counsel need to be cognizant of the fact that at this point we're talking about a modest monthly amount, which will be ending sometime next year absent an order that it be continued, *289 if such an order is appropriate, which was kind of what Mr. Blaylock was talking about in the latter part of his argument. The fact of the matter is, it looks like we're talking about maybe $ 4,000 total. Counsel should be aware of that, and certainly this Journal Entry makes clear that the Court will be aware of that at the time such a motion is heard.
The $ 4,000 total payments that Judge Royse suggested might be affected by the proceeding that might follow the Order are equal to only about 1.3 percent of the payments made during the 3 years before the Court. See supra table 1. The $ 4,000 referred to by Judge Royse is trivial in comparison to the taxes at stake in the instant cases. The timing of Ronald's motion in the Kansas Court that led to the Order suggests that that motion may have had more to do with the creation of a new "fact" for the record in the instant cases, than it had to do with a modification of the Journal Entry. Under the circumstances, if we were to grant Ronald's motion for judicial notice, then we would have to consider reopening the record for other materials that Joan and respondent might wish to introduce to rebut what Ronald urges is the *290 import of the Order and the related materials. We would also have to consider whether we should wait for a Kansas appellate ruling on the Order. See Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967). We conclude that (1) the Order and the related material are judicially noticeable; and (2) the Order and related material are relevant; nevertheless (3) the probative value of the Order and the related material is small and is substantially outweighed by the danger of unfair prejudice, and considerations of undue delay and waste of time. Thus, even if we were to take judicial notice of the Order and the related material, we would not receive them into evidence. Accordingly, no purpose would be served by granting Ronald's judicial notice motion. We hold for Joan and respondent. An appropriate order will be issued denying Ronald's motion to take judicial notice of adjudicative facts.
Footnotes
1. Although respondent determined a deficiency against petitioner Ronald R. Prater (hereinafter sometimes referred to as Ronald) for 1986, Ronald had already paid the 1986 amount some 3 months earlier and had filed a claim for refund about 12 days before the notice of deficiency. Accordingly, Ronald's petition in this Court does not contest the 1986 deficiency determined by respondent; however, 1986 is before this Court because a deficiency was also determined against Joan E. Prater (hereinafter sometimes referred to as Joan) for that year.↩
2. The 1984 revision of the income tax treatment of alimony and separate maintenance payments (by sec. 422 of the Deficit Reduction Act of 1984 (DRA 1984), Pub. L. 98-369, 98 Stat. 494, 795) generally does not apply to divorce instruments executed before Jan. 1, 1985. DRA 1984, sec. 422(e)(1), 98 Stat. at 798. Because the divorce decree here involved is a 1983 document, the references in this opinion to secs. 71 and 215 are references to those sections of the Internal Revenue Code of 1954 as in effect for periods immediately before the enactment of DRA 1984. Other section references are to the sections of the Internal Revenue Code of 1986 as in effect for the dates the petitions were filed in the instant cases.↩
3. Unless indicated otherwise, all rule references are to the Federal Rules of Evidence.↩
4. Rule 201 provides as follows: Rule 201. Judicial Notice of Adjudicative Facts (a) Scope of rule. -- This rule governs only judicial notice of adjudicative facts. (b) Kinds of facts. -- A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. (c) When discretionary. -- A court may take judicial notice, whether requested or not. (d) When mandatory. -- A court shall take judicial notice if requested by a party and supplied with the necessary information. (e) Opportunity to be heard. -- A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after judicial notice has been taken. (f) Time of taking notice. -- Judicial notice may be taken at any stage of the proceeding. (g) Instructing a jury. -- In a civil action or proceeding, the court shall instruct the jury to accept as conclusive any fact judicially noticed. In a criminal case, the court shall instruct the jury that it may, but is not required to, accept as conclusive any fact judicially noticed.↩
5. Ronald does not contend that collateral estoppel should apply in the instant cases.↩
6. Rule 401. Definition of "Relevant Evidence" "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.↩
7. Rule 403. Exclusion of Relevant Evidence on Grounds of Prejudice, Confusion, or Waste of Time Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.↩