T.C. Memo. 1998-130


UNITED STATES TAX COURT


ELLEN M. RANGOS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 20840-96, 22733-96.          Filed April 6, 1998.


<u>Mark Clement</u>, for petitioner.

<u>John M. Zoscak, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, <u>Judge</u>:  By separate notices of deficiency, respondent determined the following deficiencies, addition, and accuracy-related penalties with respect to petitioner's Federal income taxes:

| Year | Deficiency | Addition to Tax and Penalties Sec. 6651(a) | Sec. 6662(a) |
|---|---|---|---|
| 1991 | $10,147 | --- | $2,029 |
| 1994 | 6,056 | $268 | 1,211 |

Unless otherwise indicated, all section references are to the Internal Revenue Code for the years under consideration. All Rule references are to the Tax Court Rules of Practice and Procedure.

These cases were consolidated for trial, briefing, and opinion.

Following concessions by respondent, the issue remaining for decision concerns the characterization (alimony, as respondent contends, or a property settlement, as petitioner contends) of payments made by petitioner's former husband for the purpose of providing petitioner with an automobile in 1991 and 1994. If the payments are determined to be alimony, then they are taxable to petitioner; if they are determined to be in the nature of a property settlement, then they are nontaxable.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time she filed her petitions, petitioner resided in Monroeville, Pennsylvania.

The Agreement

Petitioner and John G. Rangos were married in 1957; on February 10, 1972, they divorced.

On January 2, 1972, petitioner and Mr. Rangos executed a separation agreement (the Agreement), which among other matters: (1) Settled their mutual property rights; (2) provided for the support and custody of their then-minor children; and (3) provided for the support of, and alimony to, petitioner. The Agreement stated in pertinent part:

> FOURTH: Simultaneously with the execution and delivery of this Agreement, the Wife shall execute and deliver an Assignment and Quitclaim for all of her right, title and interest in and to any and all shares of corporate stock owned by the Husband. In addition thereto the Wife shall execute and deliver to the Husband an Assignment and Quitclaim of all of her right, title and interest in and to any other businesses or business interests in which the Husband may have any type ownership whatsoever.
>
> FIFTH: Simultaneously with the execution and delivery of this Agreement, the Wife shall execute and deliver to the Husband a Quitclaim Deed for all her right, title and interest in and to any and all real estate owned by the Husband and Wife wherever the same may be situate [sic].
>
> *     *     *     *     *     *     *
>
> EIGHTH: * * * he [Mr. Rangos] shall have the right of reasonable visitation with said children, and further shall be entitled to claim dependency exemptions on his Federal Income Tax Returns for the said children.

\*     \*     \*     \*     \*     \*     \*

ELEVENTH: The Husband shall pay to the Wife for her support and maintenance the sum of Two Thousand Eighty-three and 33/100 ($2,083.33) Dollars on or before the 5th day of January, 1972, Two Thousand Eighty-three and 33/100 ($2,083.33) Dollars on or before the 5th day of February, 1972, and a like and equal sum of Two Thousand Eighty-three and 33/100 ($2,083.33) Dollars on or before the fifth (5th) day of each succeeding month thereafter for so long as the Wife shall live, unless the Wife remarries or dies, in which of either events the obligation of the Husband under this Paragraph Eleventh shall cease and determine forever.

\*     \*     \*     \*     \*     \*     \*

The parties understand and agree that the payments made pursuant to the terms of this Paragraph shall for Federal Income Tax purposes be declared by the Wife as income and deductible as an expense by the Husband in accordance with the provisions of I.R.S. [sic] Code Sec. 71(a)(2); Reg. sec. 1.71-1(b)(2).

TWELFTH: The Husband shall do all things necessary to provide the Wife with the full and unrestricted use at all times of a motor vehicle comparable to a Cadillac Eldorado. As of January, 1972 this motor vehicle shall be a new motor vehicle and thereafter on each third anniversary of January, 1972, the Husband shall provide a new motor vehicle for the use by the Wife under the provisions of this Agreement. The use of said motor vehicle shall be at no expense to the Wife except the cost of the operation, maintenance and repair of same that may not otherwise be provided by the terms of any lease agreement or insurance contracts related to said lease agreements as may be contracted for by the Husband or other lessee of said motor vehicle.

Notwithstanding the foregoing, the Husband has the option to purchase for the Wife and deliver to her a comparable new motor vehicle with unencumbered title in her name, and in such event shall thereafter on or before each third anniversary date of such delivery to the Wife purchase a new comparable motor vehicle for her and deliver same to the Wife with unencumbered title in her name. In such event the Husband shall have the benefit of trade in value of the used car previously owned by the Wife.

The Wife shall have the sole decision as to the make, model and extras relative to said motor vehicle provided to her or purchased for her pursuant to the terms hereof.

The obligation of the Husband to provide or otherwise purchase a motor vehicle for the Wife shall cease and determine [sic] upon her remarriage.

In the event of the remarriage or death of the Wife, then the Wife, or her personal representative, as the case may be shall assign all her right, title and interest in the motor vehicle in her possession at that time to the Husband or to his personal representative if he be deceased, and make delivery of same accordingly.

*      *      *      *      *      *

SIXTEENTH: The Husband and Wife shall file a joint Income Tax Return for the year 1971, and the Husband shall pay all income taxes for the year 1971 in accordance therewith. In addition thereto, the Husband shall be solely responsible to pay any and all deficiencies due or determined in the future to be due as a result of any joint Income Tax Return filed by the Husband and Wife for the year 1971, or any prior years, and does hereby indemnify the Wife as to any responsibility therefor. The Husband shall be entitled to any and all refunds from joint Income Tax Returns filed by

them which may be due for any years prior to 1972, and the Wife shall endorse any such drafts upon request of the Husband.

Pursuant to the Agreement, petitioner received a $90,000 equity interest in the marital residence, various items of household furnishings, beneficiary rights in a $200,000 insurance policy in trust (that was later canceled), and a right to use a Florida condominium owned by Mr. Rangos in exchange for her interests in Mr. Rangos' various businesses and real estate.

At the time the Agreement was signed, Mr. Rangos' net worth was between $2-3 million. Mr. Rangos owned all the stock of U.S. Utilities Service Co. (U.S. Utilities), a Pennsylvania corporation. On February 1, 1972, U.S. Utilities hired petitioner as a public relations consultant for 5 years. As compensation, U.S. Utilities paid petitioner $1,041 per month. This payment was considered one-half of the alimony payment she was to receive from Mr. Rangos pursuant to Paragraph 11 of the Agreement. Although petitioner only worked for U.S. Utilities until February 1973, she continued receiving the $1,041 payment from the company every month thereafter.

Both parties were represented by counsel in the negotiations and execution of the Agreement. Mr. Rangos' attorney drafted the Agreement.

The Automobiles

In the beginning, Mr. Rangos provided petitioner with one of his company's automobiles.[1]  From 1975 to 1983, Mr. Rangos failed to provide petitioner with an automobile. Petitioner sued Mr. Rangos as a result of his breach of Paragraph 12 of the Agreement. In January 1983, the court ordered Mr. Rangos to pay petitioner the January 1975 list cost of a 1975 Cadillac Eldorado, the January 1978 list price cost of a 1978 Cadillac Eldorado, less the January 1978 blue book value of 1975 Cadillac Eldorado, and the January 1981 list cost of a 1981 Cadillac Eldorado, less the January 1, 1981 blue book value of a 1978 Cadillac Eldorado.  Thereafter, Mr. Rangos provided petitioner with a new automobile every 3 years.

Mr. Rangos dictated the form of the transaction used to provide the 1991 and 1994 vehicles.  In this respect, petitioner had to engage in extended negotiations with various persons in Mr. Rangos' company (Chambers Development Co.) and get the approval of Chamber Development Co.'s purchasing department before she obtained either the 1991 or 1994 automobiles.

On or about June 5, 1991, petitioner selected a 1991 2-door Cadillac DeVille (Vehicle No. 1).  It was less expensive than the

---

[1]  Because petitioner "basically wanted to get out of [her] marriage [with Mr. Rangos] and just walk away from that situation", petitioner preferred that Mr. Rangos give her an automobile and she would have managed to provide herself with an automobile thereafter.  Mr. Rangos preferred that petitioner use one of his company's automobiles.

Eldorado to which she was entitled under Paragraph 12. Pursuant to his option under Paragraph 12, and reserving the trade-in value to himself (subject to petitioner's obligation to relinquish the vehicle upon her death or remarriage), Mr. Rangos titled Vehicle No. 1 in petitioner's name. The total price of this vehicle (including taxes, license, title, fees, and optional equipment) was $32,733.04. On July 22, 1991, Mr. Rangos paid Cochran Cadillac $32,733.04 by personal check.

Petitioner insured Vehicle No. 1 with Standard Fire Insurance Co. and paid all insurance premiums on the automobile; Mr. Rangos was named loss payee. Petitioner paid all the operating and maintenance costs of Vehicle No. 1.

In November 1991, Mr. Rangos sold to a third party the automobile provided to petitioner in 1988 under Paragraph 12 and kept the proceeds.

Petitioner retained Vehicle No. 1 until approximately February 18, 1994, when pursuant to Paragraph 12 Mr. Rangos provided her with a new Cadillac DeVille (Vehicle No. 2), which she personally selected. Mr. Rangos titled the car in petitioner's name. The total price of this automobile (including taxes, license, title, fees, and optional equipment) was $36,350.60. In accordance with Paragraph 12, Vehicle No. 1 was traded in for Vehicle No. 2. The trade-in value of Vehicle No. 1 was $14,750. On February 16, 1994, Mr. Rangos wrote a $21,600.97 check to petitioner; she endorsed it

and tendered it to Cochran Cadillac as payment for the 1994 automobile.

Petitioner insured Vehicle No. 2 with Allstate Insurance Co. and paid all insurance premiums; she was named as the loss payee.

Petitioner performed the required maintenance on both Vehicles No. 1 and 2. Both automobiles had low mileage and were in excellent condition at the time they were traded in.

Petitioner retained Vehicle No. 2 until 1997 when, pursuant to Paragraph 12, Mr. Rangos provided her with a new Cadillac DeVille.

Federal Income Tax Returns

On her 1991 return, petitioner excluded from income Mr. Rangos' $32,733.04 payment to Cochran Cadillac for Vehicle No. 1. On her 1994 return, petitioner excluded from income Mr. Rangos' $21,600.97 payment for Vehicle No. 2. Petitioner obtained an opinion of a law firm which she relied upon in taking these positions on her returns.

On his 1991 and 1994 returns, Mr. Rangos deducted as alimony the amounts he paid for Vehicles Nos. 1 and 2 during those years pursuant to section 215.

Notices of Deficiency

In the notices of deficiency, respondent determined that petitioner failed to report alimony income of $32,733 and $21,601 for 1991 and 1994, respectively. Respondent has conceded the

section 6651(a) addition to tax and section 6662(a) accuracy-related penalties determined in the notices of deficiency.

OPINION

The sole issue to be resolved concerns the characterization (alimony or property settlement) of the payments made by petitioner's former husband for the purpose of providing petitioner with an automobile in 1991 and 1994. Petitioner asserts that these payments are not alimony and her use of an automobile was provided for pursuant to a property agreement. On the other hand, respondent contends that the payments constituted alimony to petitioner because they were: (1) Made "periodically" (i.e., every 3 years) under a written separation agreement, (2) constructively received by petitioner, and (3) made to support and maintain petitioner.

Succinctly stated, alimony or separate maintenance payments are generally taxable to the recipient and deductible by the payor, whereas transfer of property between spouses (property settlements) incident to a divorce are generally not taxable events and do not give rise to recognizable income or to a deduction. Secs. 61(a)(8), 71[2], 215(a).

---

[2] The Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 422, 98 Stat. 494, 795, extensively changed the alimony rules effective for divorce decrees executed after Dec. 31, 1984. We note that this case involves sec. 71(a)(1) prior to its revision.

In deciding the character of an award in a divorce or separation decree, great weight is given to the language and structure of the decree. Griffith v. Commissioner, 749 F.2d 11, 13 (6th Cir. 1984), affg. T.C. Memo. 1983-278. The decision of whether payments are in the nature of support (that is, alimony) or a property settlement, however, is not controlled by the labels assigned to the payments by the court in the divorce decree or by the parties in their agreement but, instead, depends upon all of the facts and circumstances. Yoakum v. Commissioner, 82 T.C. 128, 140 (1984); Beard v. Commissioner, 77 T.C. 1275, 1283-1284 (1981).

Factors which indicate that the payments are in the nature of a property settlement are: (1) The parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets; (2) the recipient surrendered valuable property rights in exchange for the payments; (3) the payments are fixed in amount and not subject to contingencies, such as the remarriage or death of the recipient; (4) the payments are secured; (5) the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during marriage; (6) the needs of the recipient were not taken into consideration in determining the amount of the payments; and (7) a separate provision for support was provided elsewhere in the decree or agreement. Beard v. Commissioner, supra at 1284-1285.

In the instant case, a majority of the above factors indicates that the payments made by Mr. Rangos were in the nature of a property settlement rather than support. Our analysis in this regard is as follows:

With regard to the first factor, we believe the Agreement was intended to be a comprehensive and final settlement of all property claims and rights between Mr. Rangos and petitioner. In this respect, Mr. Rangos was primarily concerned with retaining ownership of his business interests and real estate. He wanted these assets and used the Agreement to get them. This factor favors treating the payments as part of a property settlement.

With regard to the second factor, pursuant to the Agreement, petitioner surrendered valuable property rights: Her rights in all of Mr. Rangos' corporate stock, his business interests, and all real estate (except the marital residence). This factor favors treating the payments as part of a property settlement.

With regard to the third factor, although the payments were not fixed in amount, they were fixed in that Mr. Rangos was required to provide petitioner with full and unrestricted use of a new Cadillac Eldorado (or an equivalent automobile). The automobile payments were subject to two possible contingencies: petitioner's death or remarriage. Although these contingencies favor characterizing the payments as alimony, we do not believe that they prove fatal to petitioner's case in light of the entire

record before us. See, e.g., <u>Stiles v. Commissioner</u>, T.C. Memo. 1981-711.

With regard to the fourth factor, it does not appear that the payments were secured by any of Mr. Rangos' assets. The absence of this factor favors treating the payments as alimony.

With regard to the fifth factor, petitioner received the following pursuant to the Agreement: (1) A $90,000 equity interest in the marital residence; (2) certain items of household furnishings; (3) maintenance payments for the children; (4) alimony payments of $2,083.33 per month; (5) use of a new Cadillac Eldorado or the equivalent every 3 years; (6) beneficiary rights in Mr. Rangos' $200,000 life insurance policy in trust; and (7) a right to use a Florida condominium owned by Mr. Rangos. We believe the value of all the assets (including the use of a new Cadillac every 3 years) received by petitioner was less than one-half of the value of the property accumulated by petitioner and Mr. Rangos during their marriage. This factor favors treating the payments as part of a property settlement.

With regard to the sixth factor, we believe petitioner's needs were taken into consideration in determining the amount of the car payments. Thus, this factor favors treating the payments as alimony.

Finally, with regard to the seventh factor, a separate provision for support (Paragraph 11) was clearly enunciated in the

Agreement, declaring these support payments deductible by Mr. Rangos and taxable to petitioner. This factor favors treating the automobile payments as part of a property settlement.

Upon analyzing the seven aforementioned factors, we conclude that Mr. Rangos and petitioner intended the automobile payments to be part of a property settlement. See Kohn v. Kohn, 364 A.2d 350, 353 (Pa. Super. Ct. 1976). In reaching our conclusion, we found that petitioner credibly testified to the circumstances surrounding execution of the Agreement, its intent, and subsequent performance.

Although the language of Paragraph 12 does not provide for the tax treatment of the automobile payments, elsewhere the Agreement specifically declares the tax treatment of certain items: (1) Paragraph 8 states that Mr. Rangos is entitled to the dependency exemptions for the minor children; (2) Paragraph 11 states that the payments made pursuant to this paragraph are to be includable in petitioner's income and deductible as an expense by Mr. Rangos; and (3) Paragraph 16 refers to deficiencies and refunds regarding petitioner and Mr. Rangos' 1971 and 1972 income tax returns.

We believe that had petitioner and Mr. Rangos intended Paragraph 12 to involve taxable alimony, they would have said so. Moreover, Paragraph 12 states that "The use of said motor vehicle shall be at no expense to the Wife except the cost of the operation, maintenance and repair." (Emphasis added.) This sentence, along with petitioner's credible testimony, supports our

conclusion that the parties did not intend for petitioner to include the automobile payments as income.

Ambiguous language in a contract is to be resolved against the drafter of the agreement. <u>Rink v. Commissioner</u>, 100 T.C. 319, 328 n.8 (1993), affd. 47 F.3d 168 (6th Cir. 1995); see, e.g., <u>United States v. Seckinger</u>, 397 U.S. 203, 216 (1970). Accordingly, we construe any ambiguity of Paragraph 12 against Mr. Rangos.

Considering all the facts and circumstances, we hold that the amounts paid by Mr. Rangos for the purpose of furnishing petitioner with an automobile in 1991 and 1994 are in the nature of a property settlement, and therefore not includable in her income for those years.

To reflect the foregoing and respondent's concessions,

<u>Decisions will be entered</u>

<u>for petitioner</u>.