JOAN E. PRATER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; RONALD R. PRATER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Prater v. Commissioner
Docket Nos. 22489-89, 10956-90
United States Tax Court
T.C. Memo 1993-380; 1993 Tax Ct. Memo LEXIS 385; 66 T.C.M. (CCH) 471; August 24, 1993, Filed *385 Decision will be entered under Rule 155. JP and RP were divorced in 1983. JP received temporary support of $ 2,000 per month until the divorce decree was filed. The divorce decree ordered RP to pay to JP 33 percent of the net proceeds of an oil and gas lease for 121 months. RP claims the payments were for JP's "support and maintenance". JP claims the payments were made as part of a division of property. R is a stakeholder, but agrees with JP. 1. Held: JP's 1984, 1985, and 1986 receipts from RP in the amount of $ 24,000 per year are for support; JP must include them in her income. Sec. 71, I.R.C. 1954. 2. Held, further: JP's 1984, 1985, and 1986 receipts from RP in excess of $ 24,000 per year are part of a property settlement; JP does not have to include them in income. Sec. 71, I.R.C. 1954. 3. Held, further: The amounts includable by JP are deductible by RP; the amounts not includable by JP are not deductible by RP. Sec. 215, I.R.C. 1954. For petitioner in docket No. 22489-89: Ken W. Dannenberg and John A. Vetter. For petitioner in docket No. 10956-90: Thomas R. Docking. For respondent: Bruce K. Meneely. CHABOT
CHABOT
MEMORANDUM FINDINGS OF FACT *386 AND OPINION CHABOT, Judge: Respondent determined deficiencies in Federal individual income tax against petitioners [1] as follows: Joan E. Prater Ronald R. Prater Year
Docket No. 22489-89
Docket No. 10956-90
1984
$ 14,346.44
$ 34,936.00
1985
46,408.60
66,746.00
1986
26,709.60
After concessions by respondent, the issue for decision [2] is whether payments made by Ronald to Joan are periodic payments includable in Joan's gross income under section *387 71(a)(1)[3] and are deductible by Ronald under section 215(a), or whether they are part of a property settlement. [4]
*388 FINDINGS OF FACT Some of the facts have been stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference. Joan and Ronald resided in Wichita, Kansas, at the times their respective petitions were filed in these consolidated cases. Joan and Ronald were married on September 22, 1956. They had two sons, one born about 1960 and the other born about 1962. By mid-1983, both of the children were adults. Ronald filed a petition for divorce on March 20, 1981, in the District Court of Sedgwick County, Kansas (hereinafter sometimes referred to as the Kansas court). The Kansas court held a 2-to-3-week trial in the divorce case in late 1982. About 90 to 95 percent of the time in that trial was devoted to the valuation of an oil and gas lease known as the Binger lease. The Binger lease consists of an 87.5-percent working interest in an oil and gas property in Pratt County, Kansas. Ronald and his brother bought the Binger lease in December 1968. Ronald, a petroleum engineer, has made the operating decisions regarding the Binger lease since December 1968; he bought out his brother's share in 1975. Expert witnesses who testified before the Kansas *389 court were not able to agree on a value for the Binger lease, but testified that the Binger lease had a value of between $ 324,000 and $ 1,500,000. At the time of the divorce, Ronald was about 49 years old and Joan was about 44 years old. Joan did not work outside the home during the marriage. At some point, the Kansas court awarded to Joan temporary support of $ 2,000 per month. Ronald paid this amount, and also voluntarily paid to Joan an additional $ 1,000 per month up to September 1982. In the divorce proceeding, Ronald proposed to meet his obligation to support Joan by (1) paying alimony of $ 2,500 per month for 10 years, and (2) using certain proceeds from the proposed sale of the marital home to buy an annuity which would provide Joan with an income of $ 35,448 per year for the 10 years after the end of the alimony payments. Ronald asserted that $ 10,000 per year of the annuity payments would be a tax-free return of capital. Ronald proposed that the $ 2,500 per month support payments "shall cease upon the death of either party or Joan Prater's remarriage or cohabitation." Joan acknowledged the difficulty of setting a value for the Binger lease, and proposed "that the *390 only fair and equitable way of handling the situation is to order that the oil and gas production be sold and the net proceeds be equally divided." She proposed that, until the Binger lease was sold, either (1) Ronald continue to pay certain bills and also pay temporary alimony of $ 3,000 per month, or (2) Ronald not pay those bills but pay temporary alimony of $ 11,000 per month. On March 11, 1983, divorce counsel for Joan and Ronald orally argued their analyses of the evidence, and presented and supported their respective proposals. During the course of the presentation, Ronald's divorce counsel described the Binger lease as "simply a business situation in which Joan has an interest, as any other investor would." Ronald's divorce counsel argued for Ronald's retention of the Binger lease and focused on the alimony-annuity-sale-of-family-home approach. Joan's divorce counsel rejected alimony and focused on alternatives as to the Binger lease, as follows: Now, Your Honor, we really don't need to worry about alimony in this case. There's sufficient property to divide up between parties. And by that I'm talking about the oil and gas.
The response of the Kansas court judge, *391 rejecting both Joan's recommendations and Ronald's recommendations, was as follows: I can tell you right now the Binger lease is not going to be sold, and I'm not going to order somebody to buy annuities for somebody. What they get is going to come out of what's here, and they do with it as they wish. I also am going to say this before I recess: Somebody has to be absolutely wrong in the valuation of this oil lease when somebody puts it at three hundred and fifty-one or three hundred twenty-four thousand dollars and somebody else puts it at a real good sale at one million seven hundred and some thousand. Now, if you're really trying to get at what the value of something is, you're not going to miss it that much, folks, if either one of you is being honest or if you both are being honest or both know what you're doing. The only other conclusion that the Court can say is somebody is either wrong intentionally or somebody doesn't know what the thunder they're doing. That just comes down to that thing now because one of these things doubles the value and then leaves a million dollars in question, or one of them -- On the other hand, one of them says it is half of what it should *392 be, and then there's a million dollars in question. And if those experts couldn't get to it, gentlemen, sure puts me out on a limb with a dozen termites working on the limb at the base of the tree, doesn't it? Court's going to take a short recess. Then we'll come back and we will settle it, if you haven't.
On March 25, 1983, the Kansas court issued a memorandum, or letter ruling, announcing the decision in the divorce proceeding. The ruling does not refer to alimony, does not value the Binger lease, awards the Binger lease to Ronald, and orders Ronald to pay to Joan "30% of the net returns from the Binger lease * * * for the next 121 months. * * * The payments above are to be paid for 121 months unless terminal [sic] by the cessation of production on the lease (it peters out) or her death." The ruling does not refer to the contingencies of Joan's remarriage or cohabitation, or Ronald's death. Over the next 3 months, divorce counsel for Joan and Ronald tried to agree on the details of a journal entry, but did not succeed in doing so. On June 8, 1983, Ronald's divorce counsel wrote a letter to the Kansas court (copy to Joan's divorce counsel), which stated in pertinent part *393 as follows: 2) Termination of Alimony. We still believe that the alimony should be terminable upon the death, remarriage, or cohabitation of Joan Prater. This is the usual language employed by most courts. Only in unusual circumstances, not present here, does alimony continue in the event of death, remarriage, or cohabitation by the recipient. Furthermore, the [sic] Joan Prater will receive, upon Plaintiff's [Ronald's] death, an immediate tax-free lump-sum payment of $ 300,000.00 or, if the death is accidental, $ 600,000.00. Finally, the continuation of alimony despite these three events obviously has characteristics of a property settlement and therefore there could be tax disadvantages to the plaintiff about which the court has already expressed disapproval and has no desire to impose these severe tax consequences on Plaintiff.
A hearing was held on June 28, 1983, at which the Kansas court ruled that Joan would receive 33 percent of the gross income from the Binger lease for the next 121 months, and would have to pay her proportionate share of the lease expenses. The Kansas court ruled that the payments from the Binger lease would not stop upon Joan's remarriage *394 or cohabitation, but would stop if production from the Binger lease is terminated for good cause. The Kansas court also ruled that if the Binger lease is sold or assigned, then Joan would receive 33 percent of the proceeds and pay her share of expenses in connection with the sale or assignment. Petitioners were divorced by a Journal Entry divorce decree (hereinafter sometimes referred to as the Journal Entry of Divorce). The Journal Entry of Divorce, which was dated June 28, 1983, but was filed on July 28, 1983, was drafted by Ronald's divorce counsel, and was not signed by Joan or her divorce counsel. The Journal Entry of Divorce awards marital property and liabilities as shown in table 1. TABLE 1
Category
Joan
Ronald
Assets with values specified
$ 653,988
$ 716,764
in Journal Entry of Divorce
Liabilities with values
(157,732)
(289,086)
specified in Journal Entry
of Divorce
Items which are awarded, but
bank accounts
bank accounts
the values of which are not
1978 Mercedes-Benz
1977 Lincoln
specified in Journal Entry
personal property
speed boat
of Divorce
in her residence
house boat
except for certain
personal pro-
items
perty in his
residence
certain
personal pro-
perty in her
residence
*395 In addition, Ronald received the Binger lease, which the Kansas court did not value. The Journal Entry of Divorce provides, under the heading Method of Alimony Payment, that Ronald is to pay to Joan "as alimony and support an amount equal to 33.0% of the gross income, reduced by 33.0% of direct operating expenses * * *, from the sale of oil and gas produced from the Binger lease beginning July 1, 1983." The Journal Entry of Divorce further provides, under the heading Dispute with Regard to Alimony Payments, that -- 8) The Court reserves jurisdiction over the litigation to determine disputes between the parties as to the method, amount, and payment of the alimony due, and in regard to any manner [matter?] concerning the operation of the Binger lease including, but not limited to determination of income and allowable expenses. * * *
The Journal Entry of Divorce further provides that if the Binger lease is sold or transferred "within 121 months of the filing of this Journal Entry," then Ronald is to "receive 67.0% of the net sale proceeds after expenses and income taxes and * * * [Joan] shall receive the remaining 33.0% of the net sale proceeds after expenses of said *396 sale." The Journal Entry of Divorce further provides that -- 10) The payment of alimony shall be made for a period of 121 months from July 1, 1983 or until the cessation of economic production from the Binger lease for good cause. The payment of alimony shall cease only in the event of the death of * * * [Joan] or the occurrence of any of the events set out in paragraph 9. [I.e., the sale or other transfer of the Binger lease within the 121-month period.]
On August 5, 1983, Joan filed a motion to alter or amend the Journal Entry of Divorce, in which she moved the Kansas court to order the sale of the Binger lease and divide the net proceeds of the sale equally, or to award her a one-half working interest in the Binger lease "as a division of property and not as an award of alimony." Joan's motion contends as follows: Defendant [Joan] further shows to the Court that it is unfair that the portions of the Binger lease awarded to her as alimony shall either terminate in ten (10) years or terminate on her death. The Defendant is entitled to an estate of her own and entitled to leave her property to her children. This she cannot due [sic] under the terms and provision of *397 the Journal Entry for the reason that her interest in the Binger would terminate upon her death.
In the course of his opposition to Joan's motion, Ronald's divorce counsel noted that, if a procedure described in Powell v. Powell, 231 Kan. 456, 460, 648 P.2d 218, 221 (1982), were followed, under which Ronald's Binger lease obligation to Joan is subtracted from the value of the property (including the Binger lease) awarded to Ronald and added to the value of the property awarded to Joan, then "Defendant [Joan] gets an effective award of $ 996,256.00 while the Plaintiff [Ronald] gets an award of $ 991,624.00." Briefs thereafter presented to the Kansas court focused on the expected Federal income tax treatment of Ronald's payments under the Journal Entry of Divorce and various proposed alternatives. In the course of this argumentation, Joan's divorce counsel took the position that "it was the intent of the [Kansas] Court that the alimony payments based on 33% of the Binger lease be deductible by the Plaintiff [Ronald] and ordinary income to the Defendant [Joan]". The Kansas court issued a Journal Entry (hereinafter sometimes referred *398 to as the Journal Entry Denying Modification) on March 1, 1984, which denied Joan's motion, and stated that -- 3. The Court reconsidered whether alimony should be granted in the manner set out in the Journal Entry of Divorce and chose not to grant to Defendant [Joan] an interest in the Binger Lease in lieu of alimony. * * * 6. The Court did not reconsider the tax consequences raised by Defendant's [Joan]'s Motion.
On June 20, 1983, before the hearing that led to the Journal Entry of Divorce, Joan filed a motion to compel Ronald to reimburse her for certain expenses that she had paid or incurred. This motion was dealt with in a Journal Entry filed on November 20, 1983. In this Journal Entry the Kansas court ordered Ronald to pay $ 1,261.28 to a savings and loan as a mortgage payment on the family residence (which had been awarded to Joan), and to reimburse Joan $ 1,042.16 for certain specified medical expenditures. In this Journal Entry the Kansas court ruled as follows: 7. The payments referred to above are intended to be for the support of Defendant [Joan] by Plaintiff [Ronald] and therefore are maintenance payments.
During the years before us, Ronald paid the *399 amounts shown in table 2 to Joan pursuant to the Binger lease provision of the Journal Entry of Divorce. TABLE 2
Year
Amount Paid
1984
$  74,823.00
1985
139,828.69
1986
91,846.40
Total
306,498.09
On their tax returns for the years before the Court, petitioners reported their adjusted gross incomes in the amounts shown in table 3. Joan's amounts do not include the payments she received from Ronald. Ronald's amounts are net of his deductions for the payments he made to Joan. TABLE 3
Year
Joan
Ronald 1984
$ 1,142
$ 264,293
1985
2,155
126,735
1986
2,453
[1]
Of the payments made by Ronald to Joan, $ 24,000 in each year are periodic payments in discharge of a legal obligation imposed on Ronald because of a marital or family relationship; the remainder of the payments in each year are a division of property. OPINION Under section 71(a)(1), [5] *401 in general, a taxpayer's gross income includes periodic payments received from the taxpayer's former spouse in discharge of a legal obligation which the legal *400 separation decree or divorce decree imposes on the former spouse because of the marital or family relationship. Section 215[6] provides that, if an amount is includable in the recipient's gross income under section 71, then the taxpayer may deduct the amount from his or her gross income. Joan and respondent contend that Joan need not include in income the Binger lease payments she received from Ronald, because these payments do not constitute alimony but rather are part of a division of property. Ronald argues that the Binger lease payments he made to Joan do not represent an additional division of marital property; rather, the payments are support to Joan includable in her income and deductible by him. We agree in part with Joan and respondent, and in part with Ronald. Section 71(a)(1) provides that a taxpayer is to include payments in gross income *402 if each of a series of requirements has been satisfied. One requirement is that the payments have been made in discharge of a legal obligation imposed "because of the marital or family relationship." [7] The quoted phrase has been interpreted to require that, in order to be includable, the payment must be in the nature of support rather than a property settlement. Riley v. Commissioner, 649 F.2d 768, 772 (10th Cir. 1981), affg. T.C. Memo. 1979-237; Beard v. Commissioner, 77 T.C. 1275, 1283 (1981); Warnack v. Commissioner, 71 T.C. 541 (1979). In resolving the character of an award in a divorce or separation decree, great weight is given to the language and structure of the decree. Griffith v. Commissioner, 749 F.2d 11, 13 (6th Cir. 1984), affg. T.C. Memo. 1983-278. *403 However, the determination of whether payments are in the nature of support or part of a property settlement is not controlled by the labels assigned to the payments by the court in the divorce decree or by the parties in their agreement. Mills v. Commissioner, 442 F.2d 1149, 1151 (10th Cir. 1971), affg. 54 T.C. 608, 618 (1970); Jacklin v. Commissioner, 79 T.C. 340, 351-352 (1982); Beard v. Commissioner, 77 T.C. at 1283-1284; Warnack v. Commissioner, 71 T.C. at 551. Rather, the issue is a factual one of intent. Crouser v. Commissioner, 668 F.2d 239, 242 (6th Cir. 1981), affg. 73 T.C. 1113 (1980); Mills v. Commissioner, 442 F.2d at 1151. In the case of an ambiguous decree, resolution of the issue requires an examination of all the surrounding facts and circumstances. Jacklin v. Commissioner, supra; Beard v. Commissioner, 77 T.C. at 1284. This Court has identified the following *404 factors, the presence of which indicates that the payments are in the nature of a property settlement, and the absence of one or more of which may tend to indicate that the payments are more in the nature of a support allowance: (1) That the parties in their agreement (or the court in its decree) intended the payments to effect a division of their assets, (2) that the recipient surrendered valuable property rights in exchange for the payments, (3) that the payments are fixed in amount and not subject to contingencies, such as the death or remarriage of the recipient, (4) that the payments are secured, (5) that the amount of the payments plus the other property awarded to the recipient equals approximately one-half of the property accumulated by the parties during the marriage, (6) that the need of the recipient was not taken into consideration in determining the amount of the payments, and (7) that a separate provision for support was provided elsewhere in the decree or agreement.
Beard v. Commissioner, 77 T.C. at 1284-1285 (citations omitted). In Beard these factors were marshaled in the context of testing, or classifying, what was arguably *405 a principal sum, within the meaning of section 71(c). However, the Beard factors have also been looked to for guidance in situations which do not involve a principal sum analysis. Kan. Stat. Ann. section 60-1610(b) (1983) deals with financial matters in divorce decrees. Paragraph (1) provides, in pertinent part, as follows: (1) Division of property. The decree shall divide the real and personal property of the parties * * *. In making the division of property the court shall consider * * * the allowance of maintenance or lack thereof; * * * and such other factors as the court considers necessary to make a just and reasonable division of property.
Paragraph (2) provides, in pertinent part, as follows: (2) Maintenance. The decree may award to either party an allowance for future support denominated as maintenance * * *. The decree may make the future payments modifiable or terminable under circumstances prescribed in the decree. * * * the court may not award maintenance for a period of time in excess of 121 months. * * * The recipient may file * * * motions for reinstatement of maintenance * * *, but no single period of reinstatement ordered by the court *406 may exceed 121 months.
After examining the ruling, the Journal Entry of Divorce, and the Journal Entry Denying Modification, we conclude that the language used therein is in conflict as to whether the Kansas court intended that the payments Ronald was to make to Joan were to represent support or a division of property. On the one hand, both the Journal Entry of Divorce and the Journal Entry Denying Modification refer to the payments as alimony. On the other hand, the Journal Entry of Divorce does not make any findings as to Joan's need for support or Ronald's ability to pay support, nor are the amounts of the payments under the Binger lease in any way affected by Joan's need or Ronald's ability to pay. Also, on the one hand, the Kansas court rejected Joan's plea for an interest in the Binger lease that would survive her, that she could leave to her children, thus apparently rejecting the property division approach. On the other hand, the Kansas court rejected Ronald's contention that the Binger lease payments should end on Joan's remarriage or cohabitation. Under Kansas precedents (discussed infra) this appears to reject the support payment approach. [8]
*407 Thus, the language of the various court rulings in the divorce proceedings gives support to conflicting conclusions as to the Kansas court's intent. In examining the other Beard factors, we find ourselves faced with an award of the Kansas court which is neither fish nor fowl, partaking of some of the elements of both an award of support and a division of property. I. Analysis of Award of Support
The Binger lease payments have the following aspects of an award of support: (1) They are labeled "alimony" in the Journal Entry of Divorce; (2) they are for a period of 121 months, the maximum period of time for an award of support under Kan. Stat. Ann. section 60-1610(b)(2) (1983); (3) they are to end on Joan's death; and (4) Joan had a need for some amount of support which is not otherwise provided for in the Journal Entry of Divorce. To conclude that the Binger lease payments are in their entirety an award of support would require us to determine that the Kansas court divided the marital estate substantially unequally. From the information in table 1, supra, it appears that the property and liabilities may have been divided about evenly. However, if the Binger lease *408 were added in its entirety to Ronald's side, then Ronald would have substantially more than Joan. Indeed, as we have found, Ronald's divorce counsel told the Kansas court that, if Joan were treated as having been given a property division award of 33 percent of the Binger lease, then Joan and Ronald would have divided the marital property almost exactly in half. Also, if we were to treat the Binger lease payments as support, then the consequences of that conclusion pose difficulties in reconciling the Journal Entry of Divorce with Kansas law. We would have to conclude that the payments satisfy Ronald's obligation to support Joan, even though if the income from the Binger lease decreased and Ronald were to substitute another source of income, then his ability to provide support might remain constant while his required payments to Joan would decrease. Conversely, if Joan were to secure an additional source of income, then her need would decrease while Ronald's obligation would remain constant. Although the Kansas court reserved jurisdiction to rule on calculating the payments under the lease, the Journal Entry of Divorce does not mention any further obligation of Ronald to Joan *409 if the Binger lease ceases operations, implying that the Kansas court would not act to redress any inequities which might result from the lease payments. It appears that if the payments are alimony, or maintenance, then the Kansas court has the power to modify or even extend the payments under State law despite the apparent limitations in the language of the Journal Entry of Divorce. Kan. Stat. Ann. sec. 60-1610(b)(2) (1983). Moreover it appears to be the policy of the Kansas courts that a payee's remarriage makes "a prima facie case which requires the court to end it [alimony payments], in the absence of proof of some extraordinary circumstances justifying its continuance." Herzmark v. Herzmark, 199 Kan. 48, 54, 427 P.2d 465, 470 (1967). If we were to conclude that the Binger lease payments were entirely for support, then we would have to conclude that the Kansas court in this instance refused to order support payments to end on Joan's remarriage in the teeth of longstanding policy that (1) support payments ordinarily are to end on remarriage, Herzmark v. Herzmark, supra, and (2) a *410 trial court cannot avoid the Herzmark rule by ordering that permanent alimony shall not terminate because of remarriage. Wright v. Wright, 209 Kan. 628, 498 P.2d 80 (1972). II. Analysis of Division of Property
The payments also have the following aspects of a division of property: (1) The payments are determined solely by the net income of the lease and are not related to either Joan's need for support or Ronald's ability to pay support; (2) Joan had a vested but undetermined interest in the Binger lease at the time of the divorce, Cady v. Cady, 224 Kan. 339, 581 P.2d 358 (1978); Kan. Stat. Ann. sec. 23-201(b) (1983); [9] (3) Joan received a right to 33 percent of the net proceeds of a sale of the Binger lease if the sale occurs within 121 months of the filing of the Journal Entry of Divorce; and (4) the Kansas court specifically decided that the payments would continue even if Joan remarried or cohabited. *411 To conclude that the Binger lease payments are in entirety a property division, we would have to ignore the contemporaneous analysis of Joan's divorce counsel that "it was the intent of the [Kansas] Court that the alimony payments based on 33% of the Binger lease be deductible by the Plaintiff [Ronald] and ordinary income to the Defendant [Joan]". Also, we would have to conclude that Joan's property interest would be a full 33 percent if the Binger lease were sold, but a much smaller interest (the lesser of a life estate or an interest for a term) if the Binger lease were not sold. Finally, we would have to ignore the many Kansas opinions that indicate that the use of the label "alimony" in a divorce decree may convert an award into support payments even if the substance of property settlement was intended. See Wallace v. Wallace, 214 Kan. 344, 520 P.2d 1221 (1974); Beck v. Beck, 208 Kan. 148, 490 P.2d 628 (1971). Thus, the Binger lease payments do not fit neatly in the property division category. III. Allocation Between Support and Property Division
The parties' efforts have been *412 devoted to persuading us that the Binger lease payments were entirely for Joan's support or were entirely to divide the marital property. No party suggests that the Binger lease payments were made, in whole or in part, for any other purpose; e.g., because of an agreement to repay a loan or to transfer property. See Kern v. Commissioner, 55 T.C. 405, 408 (1970). And nothing in the record suggests that the Binger lease payments were made for any purpose other than the two pressed on us by the parties. As our analysis makes clear, the Binger lease payments have some characteristics that fit them for support and others that fit them for property division. They have some characteristics that are incompatible with support and others that are incompatible with property division. It seems to us that the Binger lease payments were intended to serve both functions and that it was not intended that either function predominate. In fact, we may speculate that the Kansas court orders were deliberately crafted to achieve this ambiguous result. Under these circumstances, we believe the appropriate solution is to allocate the Binger lease payments between the *413 two categories. See Hayutin v. Commissioner, 508 F.2d 462, 469 (10th Cir. 1974), affg. T.C. Memo. 1972-127; Soltermann v. United States, 272 F.2d 387, 390 (9th Cir. 1959); Bishop v. Commissioner, 55 T.C. 720, 728 (1971). [10] Although neither the ruling, the Journal Entry of Divorce, nor the Journal Entry Denying Modification makes such a segregation, we believe there is adequate evidence in the record to enable us to make a determination as to the extent to which the payments were intended for support.
Joan had received a temporary order for support in the amount of $ 2,000 per month which Ronald paid. [11] This preliminary determination by the Kansas court provides us with convincing evidence of what the Kansas court considered was essential for Joan's support, and we hold, accordingly, that the annual total of *414 those payments was paid for Joan's support under the Journal Entry of Divorce. We conclude that out of the amounts paid by Ronald to Joan during the years in issue, $ 24,000 per year (twelve $ 2,000 payments) was *415 paid for Joan's support and the remainder was paid by Ronald to Joan as a property division -- essentially to acquire Joan's vested but undetermined interest in the Binger lease. As a result, only $ 24,000 per year of the payments in question was deductible by Ronald on his 1984 and 1985 Federal tax returns and includable by Joan in her 1984, 1985, and 1986 Federal tax returns. The remainder of the payments were part of a property settlement, and, under the provisions of sections 71 and 215, were neither deductible by Ronald nor includable in Joan's income. Ronald argues that if we conclude that the payments are part of a division of property, then as a necessary corollary, Joan must be an owner of the Binger lease and therefore taxable on her share of the income from it. Interestingly, Joan argues that "The structure of the award puts Joan in the same position as an owner of a one-third share in the production." We disagree with both Ronald and Joan. Because we conclude that the State court, in effect, assigned 33 percent of the net proceeds of the Binger lease to Joan without assigning to her ownership of the underlying income-producing property, Ronald is properly taxable *416 on all of the income of the Binger lease and is correspondingly entitled to all the appropriate business deductions, which deductions have not been disallowed by respondent. [12]
On brief, Ronald contends that -- Granting Joan 33% of the income from the Binger Lease for a period of 121 months can hardly be considered the court's attempt to divide the Praters' assets in half. If the court had intended to effect a 50-50 division of the property, there were certainly more direct and precise ways to accomplish that goal.
The "more direct and precise ways to accomplish that goal" would have involved valuation of the property and sale or joint management of the property. The Kansas court evidently tried to get Joan and Ronald to figure out a way to deal with this, especially since the Binger lease was so large a factor in their joint finances, as to both net worth and income. However, valuation *417 turned out to be not feasible, and the Kansas court was impressed by Ronald's argument that both sale and joint management were unwise. We conclude that more direct and precise ways to accomplish a property division were not available, as a practical matter. We conclude that the Kansas court undertook to do what Joan and Ronald failed to do -- effectuate a practical and reasonably fair financial arrangement -- under great constraints. The product of the Kansas court clearly was a rejection of each side's basic construct, and not merely a compromise between the spouses' positions. We hold, for Ronald, that $ 24,000 each year is deductible by him under section 215 and includable by Joan under section 71. We hold, for Joan and respondent, that payments by Ronald in excess of $ 24,000 in any year are not includable by Joan under section 71 and not deductible by Ronald under section 215. The Kansas court urged Joan and Ronald to settle their dispute as to the Binger lease and other financial aspects of their divorce. When Joan and Ronald failed to do so, the Kansas court imposed a solution that rejected both litigants' approaches. This solution satisfied the Kansas court's obligations *418 to resolve the divorce dispute. Also, it led to the present consolidated cases. This Court urged the parties to settle the instant cases. Respondent indicated a willingness to act as stakeholder and accept any solution that was consistent under sections 71 and 215. At the trial of the instant cases, this Court suggested a possible approach that Joan and Ronald might use to enable them to reach an accommodation. Other approaches were available. Again, Joan and Ronald failed to reach an agreement. Now, after nine briefs, an interlocutory opinion (supra note 4), and many months, we have imposed a solution that rejects both petitioners' approaches. Surely, the many motions made, briefs filed, and hearings held in the Kansas divorce proceedings and the instant tax proceedings, consumed much substance and time that could have been put to better use by Joan and Ronald. The motions, briefs, hearings, and decision-making imposed added burdens on tax-supported courts of the United States and Kansas, burdens that Joan and Ronald could and should have avoided. Because of the foregoing, respondent's concessions on other matters, and various computational adjustments, Decisions *419 will be entered under Rule 155. Footnotes
1. Although respondent determined a deficiency against petitioner Ronald R. Prater (hereinafter sometimes referred to as Ronald) for 1986, Ronald had already paid the 1986 amount some 3 months earlier and had filed a claim for refund about 12 days before the notice of deficiency. Accordingly, Ronald's petition in this Court does not contest the 1986 deficiency determined by respondent; however, 1986 is before this Court because a deficiency was also determined against petitioner Joan E. Prater (hereinafter sometimes referred to as Joan) for that year.↩
2. Other adjustments relating to depletion, medical and dental expense, investment credit recapture and carryover, and self-employment tax are computational; they are to be redetermined based on our holding as to the issue for decision.↩
3. The 1984 revision of the income tax treatment of alimony and separate maintenance payments (by sec. 422 of the Deficit Reduction Act of 1984 (DRA 1984), Pub. L. 98-369, 98 Stat. 494, 795), generally does not apply to divorce instruments executed before Jan. 1, 1985. Sec. 422 (e)(1) of DRA 1984, 98 Stat. 798; see sec. 1.71-1T(e), Temporary Income Tax Regs., 49 Fed. Reg. 34458 (Aug. 31, 1984). Because the divorce decree here involved is a 1983 document, the references in this opinion to secs. 71 and 215↩ are references to those sections of the Internal Revenue Code of 1954 as in effect for periods immediately before the enactment of DRA 1984.
4. Our denial of Ronald's motion that we take judicial notice of certain recent matters involved in petitioners' divorce is explained in our opinion in T.C. Memo. 1993-273↩.
1. Ronald's 1986 year is not before us (supra↩ note 1) and his tax return for that year is not in evidence.
5. Sec. 71 provides, in pertinent part, as follows: SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. -- (1) Decree of divorce or separate maintenance. -- If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of * * * a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. * * * (c) Principal Sum Paid In Installments. -- (1) General rule. -- For purposes of subsection (a), installment payments discharging a part of an obligation the principal sum of which is, either in terms of money or property, specified in the decree, instrument, or agreement shall not be treated as periodic payments. (2) Where period for payment is more than 10 years. -- If, by the terms of the decree, instrument, or agreement, the principal sum referred to in paragraph (1) is to be paid or may be paid over a period ending more than 10 years from the date of such decree, instrument, or agreement, then (notwithstanding paragraph (1)) the installment payments shall be treated as periodic payments for purposes of subsection (a), but (in the case of any one taxable year of the wife) only to the extent of 10 percent of the principal sum. For purposes of the preceding sentence, the part of any principal sum which is allocable to a period after the taxable year of the wife in which it is received shall be treated as an installment payment for the taxable year in which it is received.
[See supra↩ note 3, for 1984 revision information.]
6. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. -- In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682, the amount thereof is not includible in the husband's gross income.
[See supra↩ note 3, for 1984 revision information.]
7. In the instant cases, the parties agree that the other requirements of sec. 71↩ have been met.
8. The Kansas Supreme Court has warned parties and courts that "when the original decree of divorce is entered care should be exercised so that any payments to equalize the division of property are not included with payments for future support denominated as alimony." Herzmark v. Herzmark, 199 Kan. 48, 52, 427 P.2d 465, 468 (1967). The Kansas Supreme Court has reaffirmed that warning in later opinions holding that where both court and counsel regarded a lump sum as alimony, the trial court could not later take the position that the award was in the nature of a property settlement, Beck v. Beck, 208 Kan. 148, 490 P.2d 628 (1971); and that where the parties were unable to agree upon cash payments to equalize a property division and upon alimony and requested that any cash award be denominated as alimony to take advantage of Federal tax provisions, the payee could not subsequently take the position that the payments were a property settlement. Wallace v. Wallace, 214 Kan. 344, 520 P.2d 1221 (1974). The parties have not directed our attention to, and we have not found, any case in which the Kansas appellate courts have ruled on whether the trial court's denomination of payments as "alimony" is controlling when the parties disagree about the nature of the payments and when the trial court's statements and order are somewhat inconsistent with the ordinary indicia of "alimony" under Kansas law.↩
9. In Wiles v. Commissioner, 499 F.2d 255 (10th Cir. 1974), affg. 60 T.C. 56 (1973), the Court of Appeals for the Tenth Circuit held that under Kansas law, the wife had no vested rights in her husband's property at the time of the transfer. See McIntosh v. Commissioner, 85 T.C. 31, 38 (1985). After the Wiles opinion, the Supreme Court of Kansas considered the rights of a wife in her husband's property and determined that upon the filing of divorce, each spouse has a vested but undetermined interest in all the property individually or jointly held by the spouses. Cady v. Cady, 224 Kan. 339, 344, 581 P.2d 358, 362-363 (1978). In the meanwhile, the Kansas legislature also was reacting to Wiles. In 1978, Kansas enacted Kan. Stat. Ann. sec. 23-201(b) (1978), which embodies essentially the same rule, prospectively, as Cady v. Cady, supra, shortly afterward announced was already the law. See Wachholz v. Wachholz, 4 Kan. App. 2d 161, 603 P.2d 647 (1979). The Court of Appeals for the Tenth Circuit recognized this change in Kansas law in Maus v. Maus, 837 F.2d 935, 939 (10th Cir. 1988), disapproved of on another issue, Farrey v. Sanderfoot,    U.S.  , 111 S. Ct. 1825, 1828 (1991). In determining what Kansas law is, we follow the Supreme Court of Kansas' exposition of that law. See Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967); Ward v. Commissioner, 87 T.C. 78, 92↩ (1986). In view of the subsequent decision of the Kansas Supreme Court, we conclude that Joan had a vested but undetermined interest in the Binger lease.
10. See also Hall v. Commissioner, T.C. Memo. 1982-605↩.
11. We note that Ronald made additional payments of $ 1,000 per month; however, he stopped making the additional payments shortly before the trial in the divorce case, about 10 months before the Kansas court filed the Journal Entry of Divorce. In this respect, Ronald's temporary voluntary payments are distinguishable from the voluntary payments in Bishop v. Commissioner, 55 T.C. 720, 728↩ (1971). At one point, Ronald proposed to pay $ 2,500 per month to Joan as support. Because this would be his total outlay under that proposal and this was offered in opposition to Joan's proposal that she receive a one-half interest (or its equivalent) in the Binger lease, we do not regard Ronald's proposal as persuasive that Joan's proper level of support was more than $ 2,000 per month.
12. See also Yonadi v. Commissioner, T.C. Memo. 1992-602↩, on appeal (3d Cir., May 18, 1993).